UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Francis B. Volante,

               Plaintiff,

                       **Hon. Hugh B. Scott**

       v.                            01CV55A

                                      **Report
                                      and
COMMISSIONER OF SOCIAL SECURITY[1],      Recommendation**

              Defendant.

     Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 15 and 18).

## INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

     The plaintiff, Francis B. Volante ("Volante" or "plaintiff"), filed an application for disability insurance benefits on March 13, 1997. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

---

     [1]For convenience, defendant will be identified by the official title only. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

considered the case <u>de novo</u> and concluded, in a written decision dated April 20, 1999, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on November 27, 2001, when the Appeals Council denied plaintiff's request for review.

## FACTUAL BACKGROUND[2]

The plaintiff was born on April 18, 1957. He was 42 years old at the time of the administrative hearing. Volante claims that he has been disabled since September 27, 1981 (R. 23) due to a mental health problem. Volante had previously filed for benefits sometime in 1981 based upon injuries he sustained in a motor cycle accident.[3] He is a high school graduate. His past work was that of a bartender from 1976 to 1980. He also held a series of other jobs subsequent to that time, including work as an assembler, a machine operator, and a dishwasher. (R. 114-115, 125, 129, 135, 155). He was last insured, for Social Security disability benefits, through December 31, 1986.

## MEDICAL AND VOCATIONAL EVIDENCE

Although Volante has alleged that the onset of his disability may relate to a 1981 motorcycle accident and the physical injuries he sustained, the plaintiff does not allege that his

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

[3] During the administrative hearing before the ALJ with respect to the instant application, the plaintiff's counsel argued that the denial of benefits at that time was improper. (R. 55). The plaintiff requests that his prior application be reopened. (Docket No. 18 at page 1).

disability is based upon any physical impairment.[4]  Instead, the plaintiff claims that he is disabled due to a mental impairment.  It is undisputed that the plaintiff has been diagnosed as suffering from a bipolar manic depressive disorder. (R. 28, 220).

Volante was hospitalized from March 30, 1983 to April 18, 1983 at the Niagara Falls Memorial Medical Center ("NFMMC").  At that time he was diagnosed with manic bipolar affective disorder  and alcohol abuse (in remission). (R. 180-181).   At the time of his admission, he "was quite delusional, grandiose, somewhat guarded, hyperactive and became easily excitable in affect." His "insight and judgment were poor."  (R. 180).  While in the hospital, Volante received individual, group, milieu and family therapy, as well as behavior modification therapy. (R. 181).  He was treated with Xanax, Anabuse, Dalmane, Ativan, Haldol, Tylenol, Artane, Benadryl, Navane, and Lithium Carbonate.  Volante's prognosis was "fair-guarded" upon discharge. (R. 181).  He was to be followed for thearpy through the Alcoholism Outpatient Clinic. (R. 180).

The plaintiff was again hospitalized from July 10, 1984 until August 1, 1984.  This hospitalization was upon referral by a state court judge because of "bizarre" behavior exhibited by Volante while in jail.  (R. 182).   Upon admission, Volante was "grandiose" and "was loosely associated with flight of ideas.  His insight and judgment were poor." (R. 182).  He admitted to past drug and alcohol abuse.  Throughout this hospitalization, Volante "remained grandiose and overproductive." (R. 182).  The discharge report notes that: "This patient's parents expressed concern for their son and two family sessions were held.  The family kept regular contact with

---

[4]Thus, the Court will not discuss the medical evidence in the record relating to the plaintiff's physical injuries sustained in the 1981 motorcycle accident. The Court notes that the plaintiff's physical  injuries were significant and resulted in multiple surgeries. (R. 80-83, 172).

the patient's therapist. His parents agreed to let the patient return to their home upon discharge until the patient becomes ready to live independently. The patient's behavior became better controlled while still exhibiting symptoms of grandiose thought. The patient was discharged when maximum benefit of hospitalization was attained." (R. 182). Volante's prognosis upon discharge at this time was "guarded." (R. 183).

The remaining medical evidence in the record relates to the plaintiff's treatment after December 31, 1986. On November 10, 1987, Volante was admitted to NFMMC under the care of Dr. Rhee (R. 184). Upon initial psychiatric interview, Volante was responsive but tangential, paranoid and exaggerated as well. His insight was poor, and his judgment impaired. He was treated with individual, milieu, collateral and chemotherapy as well as given Hadol, Benadryl, Thiamine, Cogentin, Tylenol, Halcion and Librium. His prognosis was guarded. He was to continue with psychiatric treatment (R. 184).

In March 1988, Volante entered the "Milestones" Program at Niagara Falls Community Mental Health Center, because he wanted to learn more about his alcoholism and in the future have his driver's license privileges restored (R. 219). He was being treated by Dr. Rhee in an outpatient clinic for bipolar affective disorder. According to treatment notes, Volante "acknowledges a dependence on alcohol especially when he is in a manic phase of his disorder" (R. 219). In July and August 1988, it was noted that, "he was laughing at various intervals when discussing issues that did not warrant laughter." (R. 213) This conduct was attributed to his bipolar disorder.

By September 1988, the plaintiff had further decompensated (R. 205). Volante was admitted to NFMMC on September 28, 1988, under the care of K. Rajendran, M.D., a

psychiatrist. Again, he was diagnosed as suffering from bipolar affective disorder, manic phase.

On this occasion, Volante was also diagnosed with psychosis. Dr. Rajendran noted:

> Patient is hyperverbal and stated "his brains were scattered." On initial psychiatric interview, patient is cooperative. Mood labile and elated and irritable. Affect tense. Speech is irrational, changing his voice often. Patient very inappropriate. Patient can strike out at any time. Delusional and grandiose, talking about flamingos and "pink hotel." Patient is very bizarre and loose at times. It is very difficult to follow his conversation, ex., "This medicine is acting vertical, that medicine is acting horizontal." Claims he can do anything he wants. His thoughts are racing so he could definitely do anything. Complains of thoughts racing, thought process disorganized, content grandiose and inappropriate. Not suicidal nor homicidal. Memory intact. Sensorium clear. Oriented to 3 spheres, intellectual functioning average, insight and judgment poor.

(R. 192). He was treated with various modalities of therapy as well as given Hadol, Cogentin, Halcion, Tylenol, Anacin and Silver Sulfadiazine. Again, the plaintiff' prognosis was "poor" on October 3, 1988, when he was discharged. (R. 192).

In October 1988, Mr. Volante's bipolar affective disorder continued to impact on his ability to remain sober. On October 3, 1988, it was noted that:

> While Francis has a history of some significant progress and active participation on the MAS program, he continues to have some underlying psychiatric disorder which significantly interferes with his sobriety maintenance program. Francis's Bipolar Affective Disorder (manic-type) has been an ongoing concern for him where he is seen as occasionally having difficulty following his medication regime, using alcohol to medicate his manic thinking, feeling and decision-making processes, and ultimately requiring psychiatric hospitalization. Unfortunately, just such ~ situution recently occurred and in late September, 1988, Francis states he discontinued taking his medication, drank some wine with friends and subsequently engaged in bizarre and delusional verbalizations and behaviors requiring inpatient hospitalization at NFPvIMC - 5-

        5. Francis was subsequently discharged and has met with his therapist in the MAS program to continue his involvement.

(R. 204). On October 12, 1988, Volante was involuntarily hospitalized at NFMMC due to increased agitation, hyperactivity, grandiosity and angry outbursts (R. 191). Upon initial psychiatric interview, the plaintiff showed hyperactivity, pressured speech and flight of ideas. He was grandiose and threatening. His insight and judgment were poor. He was a high suicidal risk or he could be very dangerous to others. When he was discharged, he accepted a referral to psychiatric clinic treatment and Milestones. His prognosis when discharged on October 27, 1988, was fair to guarded (R. 191).

     In November 1988, the plaintiff was discharged from the Milestones program because he had lapsed in taking his medication regime which led to his return to drinking and further decompensation and delusional behaviors (R. 202).

     On March 17, 1990, Volante was again hospitalized due to his bipolar affective disorder. (R. 233). He was given a course of medication, including Haldol and Tegretol. He as discharged on April 2, 1990, and was to be followed by Dr. Rhee at the outpatient clinic (R. 231).

     It appears that the plaintiff was hospitalized on other occasions and received treatment for his psychiatric condition subsequent to 1990. The Court will not recite all of the medical records relating to this period inasmuch as the Commissioner determined that Volante was disabled as of July 1,1990. (Docket No. 18 at page 6). Moreover, the post-1986 medical records are of limited relevance as to the severity of the plaintiff's condition during the period between 1981 and 1986.

     Absent from the record are contemporaneously executed residual functional capacity evaluations which adequately reflect Volante's ability to carry on substantial gainful activity

during that time period.  In a report dated April 3, 1997, Dr. Rhee opined that Volante was treated by the clinic since September 16, 1987, with a diagnoses of bipolar disorder and alcohol dependence (R. 402). Dr. Rhee noted that the plaintiff has had a long history of psychiatric symptoms **"dating back to 1987."** (R. 403)(emphasis added).  This report goes on to state that Volante has had only a limited response to medication, and that his insight and judgment are guarded.  Dr. Rhee also notes that Volante increases alcohol when he decompensates (R. 403-404). Dr. Rhee noted that Mr. Volante was unable to work as his "thoughts are too bizarre and illogical" and that the plaintiff had a limited ability to make good decisions; poor judgement; very bizarre, delusional thoughts; was very grandiose; exhibited poor concentration, racing pressured speech patterns and thoughts, labile, poor reality orientation, tangential speech patterns, and does not adapt well under any pressure. (R. 405-406).  There is nothing in this report which speaks to the plaintiff's condition prior to 1987.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

>   (4) whether the impairment prevents the plaintiff from continuing
>   his past relevant work; and
>
>   (5) whether the impairment prevents the plaintiff from doing any
>   kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a  precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional  capacity.  Washington, supra, 37 F.3d at 1442.

In the instant case, the ALJ determined that although the record reflected that Volante suffered from bipolar disorder and substance abuse during the 1981 to 1986 period, his

impairment did not meet the criteria of the Appendix 1 listings.  Further, the ALJ found that the plaintiff's substantive allegations of total disability during the relevant period were not credible.  Although the ALJ determined that Volante could not return to his previous work, he retained the residual functional capacity to perform the nonexertional requirements of work at all exertional levels.  The ALJ ruled that the plaintiff's nonexertional limitations did not significantly compromise his ability to perform work.  Thus, considering the plaintiff's age, education and work experience, the ALJ determined that Volante was not disabled during the 1981 to 1986 time period. (R. 28-29).

The plaintiff first contends that the ALJ erred in finding that Volante's mental impairment did not meet the listings (20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.04(3)) during the 1981 to 1986 time period.  Although the plaintiff did exhibit many of the symptoms listed in §12.04(3), because the plaintiff's bipolar disorder was exacerbated by his admitted alcohol and drug abuse during that time period, it is difficult to discern the limitations placed upon the plaintiff solely as a result of his mental impairment at that time.  It is undisputed that the Act bars a finding of disability if drug addiction or alcoholism is a "contributing factor material to" the determination of disability.  42 U.S.C. §423(d)(2)(c).  The test is whether the claimant would still be disabled if he or she stopped the substance abuse. 20 C.F.R. §404.1535(b)(1).  Based upon this record, the Court cannot conclude,  as a matter of law,  that Volante's symptoms resulting solely from his bipolar disorder would have met the Appendix 1 listings during the 1981 – 1986 time period.  Although Volante did have two hospitalizations during that time frame, the record reflects that Volante admitted to continued substance abuse at that time.  Further, the record suggests that the plaintiff's substance abuse interfered with his treatment (R.

306). At least one post-1986 report reflected that the plaintiff achieved some level of stability while he was able to maintain his sobriety for a period of time. (R. 216). The Court notes that the record reflects that Volante used alcohol to counter the affects of his disorder when he became manic, and that this interfered with his "sobriety maintenance program" (R. 204). However, the record does not establish that Volante's impairment, with treatment and absent his substance abuse, would have precluded his ability to perform substantial gainful activity during the 1981-1986 time period.

      The plaintiff's argument that the ALJ failed to properly credit the opinion of his treating physician, Dr. Rhee, must also fail. As noted above, the record is absent of any statement by Dr. Rhee as to the plaintiff's residual functional capacity during the time period in question. Further, none of Dr. Rhee's reports discuss the severity of the plaintiff's limitations due to his mental impairment separate and apart from his substance abuse.

      Similarly, the Court finds that the plaintiff's claims that the ALJ failed to properly evaluate the plaintiff's credibility and nonexertional limitations must also fail. The ALJ did expressly discuss the plaintiff's credibility as to the effects of his mental impairment during the time period in question. (R. 26). Initially, the Court notes the inherent difficulty, even for the plaintiff, to discern which of his symptoms related to his bipolar disorder, and which were in some way resultant from his substance abuse. In any event, the record supports the ALJ's conclusion that Volante was often non-compliant as to his treatment. One post-1986 report expressly noted that Volante had continued to abuse alcohol even while making people believe that he had stopped drinking. (R. 306). Thus, the record provides a basis for the ALJ to properly discount the plaintiff's credibility as to his impairment at the time in question. For many of the

reasons discussed above, the ALJ's determination that Volante's nonexertional impairment did not preclude his ability to perform substantial gainful activity during the time period in question pursuant to the Appendix 2 guidelines (20 C.F.R. Pt. 404, Subpart P, Appendix 2, §200.00(e)(2)).  Once again, it is difficult to discern the affect of the plaintiff's substance abuse on his residual functional capacity during the time in question.  The record supports the ALJ's determination that Volante's substance abuse and incarceration due to criminal conduct was a significantly contributing factor to his inability to work during the 1981 to 1986 period.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be affirmed.  Defendant's motion for judgment on the pleadings (Docket No. 15) should be **GRANTED** and plaintiff's motion for similar relief in her favor (Docket No. 18) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas

v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

s/HBS<br>
Hon. Hugh B. Scott<br>
United States Magistrate Judge

Buffalo, New York
September 24, 2004